Pennsylvania Industries for the Blind and Handicapped, Petitioner *v.* Thomas Larson, Secretary of Transportation of the Commonwealth of Pennsylvania, Walter Baran, Secretary of General Services of the Commonwealth of Pennsylvania, Respondents.

Argued February 5, 1980, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Rogers, Blatt, Craig and Williams, Jr. Judges Mencer and MacPhail did not participate.

*Jerome T. Foerster,* with him *Richard W. Cleckner* of *Cleckner & Fearen,* for petitioner.

*William J. Flannery,* with him *Thomas H. Lane,* of *Morgan, Lewis & Bockius,* for intervening respondent.

*Larry Keener,* Chief Counsel, *Gary Ankabrandt,* Chief Counsel and *John M. Hruborcak,* Assistant Attorney General, for respondents.

OPINION BY JUDGE CRAIG, March 12, 1980:

Pennsylvania Industries for the Blind and Handicapped (PIBH) has addressed a petition for review to our original jurisdiction in the nature of an equity action attacking the legality of the Secretary of Transportation's award, on the basis of the lowest responsible sealed bid, of a four-year contract for the establishment, maintenance and operation of numerous locations throughout the state for making instant photographic identification cards for driver's licenses.

PIBH's position is based upon Section 2409.1 of The Administrative Code of 1929[1] which, to the extent considered below, provides that the Commonwealth

---

[1] Act of April 9, 1929, P.L. 177, *as amended,* §2409.1, added by Act of July 29, 1953, P.L. 1443, §1, *as amended,* 71 P.S. §639.1.

shall purchase products and services from charitable nonprofit-making agencies for the handicapped like those represented by PIBH, without using the competitive bidding process mandated generally by Sections 2403 and 2409 of the Administrative Code, 71 P.S. §§633, 639.

PIBH's petition sets forth averments as to the Secretary's use of the sealed competitive bid process to award the contract described, on the basis of the Secretary's view that Section 2409.1, preferring agencies for the handicapped, does not apply to such a contract.

PIBH avers that it is "ready, willing and able" to perform the contract, but it is undisputed that PIBH does not and cannot aver that it possesses any actual experience in performing such work for public agencies or for private customers.[2]

Now before us is the preliminary objection of DEK/Electro, Inc., the low bidder, seeking dismissal of PIBH's petition for failure to state a cause of action as a matter of law.

Thus, taking the petition's averments as true, the question is whether, under the terms of the statute, agencies for the handicapped must be preferred over the lowest bidder for the award of the contract involved here.

Section 2409.1(b) preempts the usual competitive bidding process in favor of charitable agencies for the handicapped by placing upon the Secretary of General Services a duty:

---

[2] Although only the averments of the petition are presently before us, in the hearing held by this court on PIBH's request for preliminary injunction, an illuminating exhibit was PIBH's catalog of products made and supplied to private and public purchasers, including the Commonwealth; also in the catalog was a general mention of janitorial, mailing and carpet cleaning services available from such agencies.

> to determine the fair market price on all brooms
> and mops and other suitable products manufac-
> tured by the handicapped and services rendered
> by the handicapped.

when offered for sale by any such agency approved for the purpose by the Department.[3] Then sub-section (c) of the same section provides that:

> all brooms, mops and other suitable products
> and services, hereafter procured by or for the
> Commonwealth or any of its agencies, shall be
> procured, in accordance with applicable specifi-
> cations . . . from charitable nonprofit-making
> agencies for the handicapped . . . with the ap-
> proval of the Department . . . whenever such
> products and services are available at a price
> determined to be the fair market price. . . .

All agree that our society today has come to an awakened and enlightened view that the capabilities of handicapped persons are not to be regarded meanly and narrowly, but that the horizons of what they can accomplish as full participants in the community are unlimited. From that view, PIBH contends that the

---

[3] The entire first sentence of Section 2409.1(b), 71 P.S. §639.1 (b) reads:

> The Secretary of Property and Supplies shall have the
> power, and it shall be his duty, to determine the fair market
> price on all brooms and mops and other suitable products
> manufactured by the handicapped and services rendered by
> the handicapped and offered for sale to the Commonwealth
> or any of its agencies by any charitable nonprofit-making
> agency for the handicapped, incorporated under the laws of
> this Commonwealth, and manufacturing merchandise and
> providing services within this Commonwealth, and approved
> for such purpose by the Department of Property and Sup-
> plies to revise such prices from time to time, in accordance
> with changing market conditions, and to make such rules
> and regulations regarding specifications, time of delivery
> and other relevant matters as are necessary to carry out
> the provisions of this section.

terms of Section 2409.1 permit handicapped agencies to displace competitive bidding for any service which handicapped persons could competently perform, thus excepting only those services where unusual talent or unattainable mobility would be required. In accordance with the averments before us, we must assume PIBH to be capable of competently performing the contract in question.

DEK claims, however, that the legislature evidenced an intention to give the exception a more limited scope by the phrase "all brooms and mops and other suitable products manufactured by the handicapped and services rendered by the handicapped." Because both sides agree that the scope of the law is confined to "suitable" services as well as to suitable products, DEK invokes the rule of ejusdem generis to argue that the mention of "brooms and mops" indicates that only products and services of the nature of those thus itemized are to be considered "suitable."

The above-mentioned doctrine expresses the idea that:

'General expressions used within a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions. . . .'

*Butler Fair & Agricultural Association v. Butler School District,* 389 Pa. 169, 178, 132 A.2d 214, 219 (1957).

Application of that doctrine of interpretation appears to be the only approach available to resolve the even balance between the public benefit inherent in competitive bidding and the sound public policy which plainly underlies the preemptive provision in favor of the handicapped.

Why did the lawmakers say "brooms, mops and other suitable products and services" when, if they intended the scope for which PIBH contends, they

could have used language like "any products or services which handicapped persons can competently make or perform?"

We agree with PIBH that words as commonly used must not be distorted in applying ejusdem generis, *Davis v. Sulcowe,* 416 Pa. 138, 205 A.2d 89 (1964), and that all the words of the law are to be given meaning, if possible. *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 244 A.2d 1 (1968).

Hence, without stopping at just the mention of brooms and mops, we must focus on the intended scope of "suitable" products and services, but remaining aware that the legislature has plainly referred to brooms and mops as illustrative.

Our conclusion is that the legislature did not give those examples to confine the scope of "suitable" merely to products and services as uncomplicated as brooms and mops may be; such an "uncomplicated nature" test would demean without foundation the unlimited capabilities of handicapped persons.

However, precisely because the potentialities of handicapped citizens are unlimited, in that there is no product or service which could not be achieved by some handicapped person or group, we remain convinced that the General Assembly used the adjective "suitable" to place some intermediate limit upon a law which grants an extraordinary preemptive privilege.

We can only conclude that the legislature referred to output traditionally associated with handicapped agencies to signify that their privilege would apply to products and services which have been established by actual experience as suitable for such a preference. With the preference confined to matters as to which handicapped agencies have demonstrated their proficiency in the marketplace, such a "track record" test provides a degree of certainty for the guidance

of the Commonwealth administrator in identifying output covered by the preference law, as well as confirmation of competency.

We cannot agree with the argument of PIBH that the track record test would bar preference in Commonwealth procurement with respect to any product or service which the state is not presently obtaining from PIBH's agencies. Clearly, those agencies can acquire experience in the private sector's market as to products and services not previously provided to the state; because the statute requires the state's purchases to be made at "fair market price", there is no basis for believing that entry into the private sector market would be any harder to obtain than Commonwealth business.

As we interpret the statute, we must sustain the demurrer and dismiss the action.

### ORDER

AND Now, this 12th day of March, 1980, the preliminary objection of Respondent DEK/Electro, Inc., in the nature of a demurrer, is sustained, and this action is dismissed.

President Judge BOWMAN did not participate in the decision in this case.