436 A.2d 122

**PENNSYLVANIA INDUSTRIES FOR the BLIND AND HANDICAPPED, Appellant,**

v.

**Thomas LARSON, Secretary of Transportation of the Commonwealth of Pennsylvania, Walter Baran, Secretary of General Services of the Commonwealth of Pennsylvania, and DEK/Electro, Incorporated, Appellees.**

Supreme Court of Pennsylvania.

Argued May 20, 1981.

Decided Sept. 24, 1981.

2

Jerome T. Foerster, Richard W. Cleckner, Harrisburg, for appellant.

John M. Hrubovcak, Asst. Atty. Gen., for appellee Penndot.

Gary F. Ankabrandt, Asst. Atty. Gen., for appellee General Services.

William Flannery, Harrisburg, for appellee DEK/Electro, Inc.

Before ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

KAUFFMAN, Justice.

This is an appeal from an order of the Commonwealth Court sustaining the demurrer of appellee, DEK/Electro, Inc. ("DEK"), and dismissing the Petition for Review of appellant, Pennsylvania Industries for the Blind and Handicapped ("PIBH"). *Pennsylvania Industries for the Blind and Handicapped v. Larson,* 50 Pa.Cmwlth. 84, 411 A.2d 1305 (1980). Contending that the Legislature has mandated that the Commonwealth procure needed services from charitable nonprofit-making agencies for the handicapped competent to provide such services at their fair market price, PIBH challenges the award to DEK of a four year services contract to make photographic driver's license identification cards. We conclude that PIBH has correctly interpreted the salutary legislative intent to aid the handicapped and, accordingly, reverse the March 12, 1980 Order of the Commonwealth Court.[1]

The facts are not in dispute.[2] By the Act of June 17, 1976, P.L. 162, No. 81, 75 Pa.C.S.A. § 1510, the Pennsylvania Legislature mandated that each driver's license contain a color photograph of the licensee. In July, 1979, appellees, the Secretaries of the Department of Transportation and the Department of General Services (collectively "Commonwealth"), advertised in major newspapers throughout the Commonwealth soliciting bids to establish, maintain, staff, and operate centers statewide to take the color photographs and laminate the drivers' licenses.[3]

Upon learning of this invitation for bids, PIBH, a charitable nonprofit-making agency representing handicapped or-

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended,* April 28, 1978, P.L. 202, No. 53, § 10(5), 42 Pa.C.S.A. § 723(a).

2. Because a demurrer was sustained, all well-pleaded facts of the Petition for Review must be accepted as true.

3. Bids were solicited for two contracts: (1) a *materials contract* for equipment and supplies and (2) a *services contract* for taking the pictures and laminating the drivers' licenses.

ganizations, requested that the Commonwealth determine the fair market price of the services to be procured and offer the services contract to PIBH without competitive bidding pursuant to Section 2409.1(c) of the Administrative Code of 1929.[4] The Commonwealth rejected PIBH's request, contending that Section 2409.1(c) does not apply to the instant services contract, but did postpone the bid opening to give PIBH the opportunity to submit a bid.

On July 25, 1979, PIBH filed its Petition for Review of the Commonwealth's action.[5] DEK was granted leave to intervene and to file preliminary objections in the nature of a demurrer on August 1, 1979. After oral argument, the Commonwealth Court, *en banc*, sustained DEK's demurrer and dismissed PIBH's Petition for Review. This appeal followed.

## I

■ Appellees, relying on the principle of *ejusdem generis*, contend that only products *and services* of the same uncomplicated nature as those *products* which the statute expressly mentions, brooms and mops, are "suitable" under Section

---

4. The Administrative Code, Act of April 9, 1929, P.L. 177, Art. XXIV, § 2409.1(c), *as amended*, Dec. 14, 1967, P.L. 723, 71 P.S. § 639.1(c), provides in pertinent part:
 ". . . . All brooms, mops, and other *suitable* products and *services*, hereafter procured by or for the Commonwealth or any of its agencies, *shall be procured*, in accordance with applicable specifications of the Department of . . . . [General Services], *from charitable nonprofit-making agencies for the handicapped*, organized under the laws of this Commonwealth, and manufacturing such products and *offering services* within this Commonwealth, with the approval of the Department of . . . . [General Services], *whenever such* products and *services* are available *at a price determined to be the fair market price for the product, products or services so manufactured or offered*, as hereinbefore provided." (Emphasis supplied.)

5. PIBH simultaneously sought to enjoin the scheduled bid opening, but its application for a preliminary injunction was denied. DEK was the lowest bidder, at $1.00 per license card. PIBH was the second lowest bidder, at $1.59 per license card. DEK was awarded the materials contract on July 16, 1979 and the services contract on August 10, 1979.

2409.1(c).[6] We disagree. To begin with, "brooms and mops" are products only, and thus obviously do not illustrate, modify or limit the phrase "suitable services." Moreover, to restrictively interpret "suitable" to include only those services requiring no more skill than necessary to manufacture brooms or mops would contravene the sound public policy underlying this legislation and frustrate the commendable efforts of the Legislature to recognize and respect the dignity of the thousands of competent handicapped human beings who desperately want to help themselves.[7] As the Commonwealth Court acknowledged, "such an 'uncomplicated nature' test would demean without foundation the unlimited capabilities of handicapped persons." *Pennsylvania Industries for the Blind and Handicapped v. Larson*, 50 Pa. Cmwlth. at 89, 411 A.2d at 1307.

In adopting Section 2409.1(c) of the Administrative Code, the Legislature plainly intended to help the handicapped help themselves by requiring the Commonwealth to procure from them all needed services without competitive bidding, provided only that they are willing and able to perform competently and at a price determined by the Commonwealth to be the fair market price.[8]

6. Citing *Butler Fair and Agricultural Association v. Butler School District*, 389 Pa. 169, 178, 132 A.2d 214, 219 (1957), appellees define the principle of *ejusdem generis*:

>General expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions.

7. We further note that it neither has been alleged nor proved that performance of the services contract before us would be more complex or demanding than the manufacture of brooms or mops. Indeed, at the demurrer stage of these proceedings, we must accept the assertion that PIBH would perform competently.

8. The original version of the statute, enacted in 1953, required the Commonwealth to purchase "all brooms, mops and other suitable products and services" from charitable nonprofit-making agencies for the blind whenever available at the fair market price. An amendment in 1967 substituted the term "handicapped" for the term "blind." Act No. 333, 1967, Dec. 14, P.L. 723. The Legislature's obvious intent in amending the statute was to include individuals with handicaps other than blindness within the group whom the Commonwealth must prefer in awarding contracts for goods and

## II

 Contrary to appellees' contention, our view of Section 2409.1(c) does not raise any question regarding the constitutionality of this remedial legislation. Article 3, § 22 of the Pennsylvania Constitution provides:

> The General Assembly shall maintain by law a system of competitive bidding under which all purchases of *materials, printing, supplies* or *other personal property* used by the government of this Commonwealth shall so far as practicable be made. . . . (Emphasis supplied).

This provision obviously has no applicability to contracts for *services,* such as the one now before us.[9]

## III

 The Commonwealth Court recognized that "[a]ll agree that our society today has come to an awakened and enlightened view that the capabilities of handicapped persons are not to be regarded meanly and narrowly, but that the horizons of what they can accomplish as full participants in the community are unlimited. . . . In accordance with the averments before us, we must assume PIBH to be capable of competently performing the contract in question." 50 Pa.Cmwlth. at 87–88, 411 A.2d at 1306–7. Despite this view, the Commonwealth Court fashioned and adopted a "track record" test requiring the Commonwealth to procure from handicapped agencies only those products and services which they presently are manufacturing or providing:

> We can only conclude that the legislature referred to output traditionally associated with handicapped agencies to signify that their privilege would apply to products and

services. Since the range of products and services which the handicapped can provide is much broader than those which can be supplied by the blind, the effect of the 1967 amendment was to greatly expand the range of contracts which the Commonwealth must award to the handicapped without competitive bidding.

9. We need not address the constitutionality of the pre-emptive right which Section 2409.1(c) confers on handicapped agencies in contracts for the purchase of *products* by the Commonwealth.

services which have been established by actual experience as suitable for such preference.

*Pennsylvania Industries for the Blind and Handicapped v. Larson*, 50 Pa.Cmwlth. at 89, 411 A.2d at 1307. We reject this artificially narrow interpretation of unambiguous remedial legislation. Reading in an unexpressed requirement to demonstrate advance "proficiency in the marketplace" is hardly an enlightened view of the Legislature's clear intent to expand the range of opportunities for the handicapped to help themselves.[10]

Accordingly, the March 12, 1980 order of the Commonwealth Court is reversed and the matter is remanded for further proceedings consistent with this Opinion.

O'BRIEN, C.J., and WILKINSON, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice, concurring.

I agree with the majority that the case should be remanded and that, upon request by a qualified agency for the handicapped, the Commonwealth is obliged, pursuant to the Administrative Code, to provide the agency with the fair market price of the services that it wishes to be performed. Of course, should the agency reject the Commonwealth's determination of a fair market price, the agency may either challenge the Commonwealth's determination or join the ranks of competitive bidders.

10. Contrary to appellees' contentions, PIBH's request for an order reinstating its Petition for Review in the Commonwealth Court has not been rendered moot by intervening events. The cases which appellees cite to support the proposition that this Court generally does not consider appeals from decrees dismissing complaints seeking injunctive relief when the act sought to be restrained has been performed are inapposite. Here, the four-year service contract to make photographic driver's license identification cards remains substantially unperformed.