Paragraphs 6–13: No additional findings necessary.

PENNSYLVANIA INDUSTRIES FOR the BLIND AND HANDICAPPED and North Central Sight Services, Inc., Petitioners

v.

DEPARTMENT OF GENERAL SERVICES, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2004.

Decided Nov. 10, 2004.

Ordered Published Jan. 31, 2005.

2. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2602(t).

Paul B. Beck, Philadelphia, for petition-ers.

Nancy Kippenhan, Harrisburg, for re-spondent.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge (P.), and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

The Pennsylvania Industries for the Blind and Handicapped, on behalf of its member organization, North Central Sight Services (collectively referred to as Petitioners), appeal a decision by the Department of General Services (DGS) through its Deputy Secretary for Procurement, which granted in part and denied in part a protest filed pursuant to the Commonwealth Procurement Code, 62 Pa.C.S. §§ 101–4509 (1998) (Procurement Code). Petitioners, for a period of approximately four years, had supplied Commonwealth agencies with its Compact Disc (CD) duplication service through a Master Agreement for Procurement of Handicapped-made Products, State Contract No. 9980–02 (State Contract), and pursuant to the no-bid provisions of the Procurement Code. In October 2003, Petitioners' attempted to add its supply of "computer media" (i.e., blank CDs) to the State Contract. After the submission of this request, DGS not only denied Petitioners request to add the supply of blank CDs to the State Contract, but also informed Petitioners that it intended to remove Petitioners' CD duplication service from the State Contract. Petitioners protested both facets of the decision. Upon reconsideration, DGS granted Petitioners' protest of the removal of their CD duplication service from the State Contract, and denied their protest of DGS's refusal to add blank CDs to the State Contract. This appeal centers on DGS's refusal to add Petitioners' supply of blank CDs to the State Contract, pursuant to the no-bid provisions of the Procurement Code.

The relevant facts in this matter are not disputed. Pursuant to Petitioners' request, in June 1999, DGS agreed to add Petitioners' Compact Disc Duplication service[1] to the PIBH Catalog[2] (Catalog), pursuant to the no-bid provisions for goods and services provided by persons with disabilities found in Section 520 of the Procurement Code. (O.R. at 43a.) The Catalog contains a list of products that Petitioners, through the labor of its handicapped employees, supply to Commonwealth agencies. Petitioners' Compact Disc Duplication service appeared in the Catalog from 2000 through to the present time.

In October 2003, Petitioners requested that DGS add its blank CDs to the State Contract and catalog the computer media at a fair market price pursuant to the no-bid provisions of the Procurement Code. (O.R. at 61a.) These blank CDs come packaged in both CD jewel cases and on CD spindles.

DGS denied this request by letter dated November 10, 2003, and, in addition, informed Petitioners that the previous contract to provide Compact Disc Duplication Services would be discontinued as of December 31, 2003. (O.R. at 67a.) The basis for both the denial and discontinuance was that disabled employees were not making an "appreciable contribution in manufac-

---

1. DGS determined the CD duplication service to be "manufacturing" because of Petitioners' role in altering the form, composition, and character of the duplicated CD and its attendant packaging. (O.R. at 71a.) Through the duplication service, Petitioners infused new data into a blank CD and, in addition, created silk-screened images that were inserted into the topside of a jewel case which held the

data-infused CDs. (O.R. at 77a–78a; DGS Findings of Fact (FOF) ¶ 7).

2. Exhibit A, para. 1, of the State Contract states: "Commonwealth agencies shall purchase from PIBH, and PIBH shall sell to Commonwealth agencies, the products listed in [PIBH Price List Schedule, Catalog Number 496] for the prices listed...." (O.R. at 14a.)

turing the intended supply to be procured," (O.R. at 67a) pursuant to Section 520 of the Procurement Code. Petitioners filed a protest to both facets of this decision.

■ Upon review commenced after the protest, the Chief Procurement Officer of DGS recommended that DGS not discontinue the CD duplication service from the Contract, but affirmed DGS's decision not to add blank CDs to the Catalog. (O.R. at 71a.) The Chief Procurement Officer opined that placing blank computer media in intermediate packaging containers does not constitute "manufacturing," but was a Section 520(h) "service" that a manufacturer would normally provide as part of its manufacturing and distribution process. (O.R. at 72a.) The Deputy Secretary agreed and Petitioners now appeal DGS's refusal to add the provision of blank CDs to the Catalog to this Court.[3]

The central issue in this case is whether assembling jewel boxes or spindles from component parts, and then inserting blank CDs into them, constitutes either "manufacturing" or a "service" covered by the Procurement Code. To come within the ambit of Section 520 as either "manufacturing" or a "service," Petitioners' activities must constitute a process of combining two separate supplies and packaging it for delivery.[4]

Section 520(a)(1) provides the general rule for the procurement of goods and services from agencies employing persons with disabilities:

(a)(1) Contracts for *supplies manufactured by and services performed by persons with disabilities* shall be entered into in accordance with this section without the requirement for competitive bidding. Persons with disabilities must make an *appreciable contribution* in manufacturing an item or performing a service.

62 Pa.C.S. § 520(a)(1)(emphasis added). Section 520(h) defines "appreciable contribution" as:

(1) In addition to paragraph (2), the department shall determine whether the contribution by individuals with disabilities is appreciable. *Persons with disabilities must make an appreciable contribution in manufacturing a supply or performing a service.*

(2) At least 75% of the personnel either engaged in the direct labor of manufacturing of a supply or engaged in the direct labor in performing a service in this Commonwealth must be visually impaired, mentally retarded or physically disabled. *In addition, at least 75% of the amount paid by the Commonwealth agency for the supply or the service shall be remitted to the agency for persons with disabilities to cover payment of wages and salaries to persons with disabilities and to cover other actual manufacturing costs incurred by the agency for persons with disabilities in manufacturing of a supply.*

62 Pa.C.S. § 520(h)(1)(2)(emphasis added).

In determining that Petitioners' involvement in selling blank CDs did not consti-

---

**3.** Our Scope of Review is limited to, a determination of whether constitutional rights have been violated, an error of law has been committed, the procedures of the agency have been violated, or whether any necessary findings of fact made by the agency are not supported by substantial evidence. *Direnzo Coal Co. v. Department of General Services,* 825 A.2d 773, 775 n. 4 (Pa.Cmwlth.2003).

**4.** "When the words of a statute are clear and free from all ambiguity, the letter of it may not be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.1921(b). *See also Kan v. Workers' Compensation Appeal Board (Budd Company),* 852 A.2d 1286, 1288 (Pa. Cmwlth.2004).

tute manufacturing, DGS viewed the following steps as simply "intermediate packaging":

1) Assembly of jewel cases from plastic parts;

2) Assembly of trays and jewel cases;

3) Assembly of boxes;

4) Placement of blank CDs and jewel cases into the assembled boxes;

5) Transfer of items to a shrink-wrapping station;

6) Shrink-wrapping of the packages;

7) Labeling of shrink-wrapped products with proper bar codes;

8) Assembly of shipping cartons;

9) Packing the shipping carton with specified case sizes;

10) Transfer of finished to shipping area; and

11) Application of proper shipping labels.

(O.R. at 79a; FOF, Request to Add Computer Media to State Contract ¶ 5.)

DGS concluded that the packaging of blank CDs did not come within the definition of "manufacturing," based on its definition as provided in Section 520(h)(2):

> The transformation of raw materials or the *assembly of essential component parts* or a combination of both in the production of a supply which is *different in form, composition or character* from the raw materials or the essential component parts. This definition applies only to the assembly of a supply.

62 Pa.C.S. 520(h)(2)(emphasis added). DGS determined that the blank CDs furnished to Commonwealth agencies would not differ in form, composition, or character from the blank CDs procured by Petitioners to furnish to Commonwealth agencies—thus, there was no appreciable contribution made by Petitioners. (O.R. at 81a.) Furthermore, while Petitioners

might assemble the packaging (i.e., jewel cases) for the computer media, the supply needed by the Commonwealth was the blank CDs, not the packaging.

DGS did not categorize Petitioners' involvement in intermediate packaging of computer media for the Commonwealth as a Section 520 service warranting no-bid status, but, rather, as the type of service specifically excluded by Section 520(h), i.e., packaging that is usually provided by the manufacturer as part of its manufacturing and delivery process. (O.R. at 81a.) Section 520(h)(2) defines "Services" as:

> While "services" is defined in section 103 (relating to definitions), for the purposes of this section, the term specifically includes such packaging or repackaging which, as determined by the department, provides *a substantial and real benefit to the Commonwealth agency* which needs the supplies to be packaged or repackaged. When packaging or repackaging services are to be provided to a Commonwealth agency by an agency for persons with disabilities, the Commonwealth agency shall make the arrangements for the procurement of the supplies to be packaged or repackaged. *Packaging or repackaging shall not be considered "services" if the manufacturer usually packages or repackages the supplies in the quantity required by the agency as a part of its manufacturing and distribution process. This definition applies only to the packaging or repackaging of a supply*

62 Pa.C.S. § 520(h)(2) (emphasis added).

Petitioners seek to characterize the supply in this case as two products (CDs and protective casing). They argue that they are manufacturing because they combine two essential separate component parts (CDs and protective casing) into one final supply (CDs assembled in casing) which is

different in form, composition or character than the separate parts.

■ This Court cannot agree with Petitioners characterization of their role in packaging blank CDs as part of a "manufacturing" process. Petitioners are not altering the essential character of the supplied CDs; consequently, they are not making an appreciable contribution to the supply needed by the Commonwealth. From the time Petitioners receive the blank CDs from their original supplier, to the time the blank CDs are shipped to a Commonwealth agency, the character of the blank CDs will not change. Petitioners' involvement is limited to packaging and shipping, not altering the character, of the CD supply needed by the Commonwealth.

■ Alternatively, Petitioners argue that their assembly of blank CDs into either jewel cases or on spindles could constitute a "service." However, contrary to Petitioners argument, there is no evidence of record that DGS or any Commonwealth agency requests or would request that the computer media be shipped or repackaged in anything other than the normal manner. Petitioners argue that its packaging of the blank CDs will provide a substantial and real benefit to a Commonwealth agency because they benefit from the protection that a spindle or jewel case provides to blank CDs both during and after transit.

However, this incidental benefit is the same benefit packaging customarily provides to customers. In summary, this Court agrees with DGS that Petitioners provide the packaging service usually provided by the manufacturer of blank CDs and that the routine repackaging of a supply is specifically excluded by the definition of a "service" in Section 520(h).[5]

■ Petitioners also argue that it was denied "meaningful notice" of DGS' rationale for refusing to allow the addition of computer media to the Catalog and that the Deputy Secretary should not have made factual findings based only on a paper record. However, review of the record discloses that DGS first advised Petitioners that the placing of blank CDs in jewel cases was not manufacturing in its letter of November 10, 2003, and later expanded on this by explaining that such an action did not constitute "service" because it was "packaging." (O.R. at 72a.) These explanations were sufficient to advise Petitioners of the reasons why it was being denied relief. Furthermore, Petitioners' submission of various documents addressing these issues demonstrates its understanding of what type of evidence was needed. Merely because Petitioners did not meet its burden does not mean that there was a denial of due process. Section 1711(e)[6] vests with the Deputy Secretary discretion as to the granting of a live hearing. In this case, his refusal to do

---

5. This Court recognizes the remedial nature of the Procurement Code and its obligation to expansively interpret its provisions, see Orlosky v. Haskell, 304 Pa. 57, 62, 155 A. 112, 114–15 (1931), so as to effectuate the General Assembly's goal of helping the handicapped help themselves. See Pennsylvania Industries for the Blind and Handicapped v. Larson, 496 Pa. 1, 436 A.2d 122, 124 (1981)(interpreting the predecessor version of the Procurement Code). However, adopting the Petitioners interpretation would contravene the legislative directive that persons with disabilities must make an "appreciable contribution" in manu-

facturing a supply or performing a service. We do not consider simply placing blank CDs into intermediate packaging an "appreciable contribution" to the manufacturing of the CDs such as would come within the statute and do not believe this to be the intent of the General Assembly.

6. Section 1711.1(e) of the Procurement Code states:

e) Evaluation of protest.—The head of the purchasing agency or his designee shall review the protest and any response or reply and may request and review such addition-

so was not an abuse of that discretion because DGS clearly submitted all relevant information to him in paper form. Contrary to Petitioners' characterizations in its brief, we conclude that this dispute was not one of facts, but of ultimate legal conclusion. Therefore, we reject Petitioners' due process argument.

◼ Finally, Petitioners argue that DGS abused its discretion by refusing to stay the procurement of alternative supplies of blank CDs pending resolution of the Petitioners' protest.

Section 1711.1(k) reads:

**(k) Stay of procurement during pendency of protest.**—In the event a protest is filed timely under this section and until the time has elapsed for the protestant to file an appeal with Commonwealth Court, the purchasing agency shall not proceed further with the solicitation or with the award of the contract *unless and until the head of the purchasing agency, after consultation with the head of the using agency, makes a written determination that the protest is clearly without merit or that award of the contract without delay is necessary to protect substantial interests of the Commonwealth.*

62 Pa.C.S. 1711.1(k)(emphasis added).

Petitioners argue that the record provides no basis for DGS to determine it necessary to proceed with procurement of blank CDs during the pendency of the protest because there was no showing in the record of a substantial Commonwealth interest in their immediate procurement. It argues that if DGS can make a determination to procure supplies during the pendency of an appeal, then administrative

agencies will have unfettered discretion to ignore the automatic stay provision of the Procurement Code. The record reflects, however, that the letters of December 16, 2003 and December 8, 2003 contain "*a written determination that the protest is clearly without merit*" called for in Section 1711.1(k) and also contain the reasoning of DGS's Chief Procurement Officer as to why Petitioners do not meet the requirements of Section 520. Therefore, DGS satisfied the requirements of Section 1711.1(k), and it was not required to stay procurement.

For the foregoing reasons, we affirm the decision of DGS.

### O R D E R

**NOW,** November 10, 2004, the order of the Deputy Secretary of the Department of General Services is hereby AFFIRMED.

---

*al documents or information he deems necessary to render a decision and may, at his sole discretion, conduct a hearing.* The head of the purchasing agency or his designee shall provide to the protestant and the contracting officer a reasonable opportunity to review and address any additional documents or information deemed necessary by the head of the purchasing agency or his designee to render a decision.

62 Pa.C.S. 1711.1(e)(emphasis added).