## Wilma WOOD

### v.

## C.G. STUDIOS, INC.

### Civ. A. No. 86–2563.

United States District Court,
E.D. Pennsylvania.

April 24, 1987.

Rex F. Brien, Slap, Williams & Cukor, Philadelphia, Pa., for plaintiff.

Joseph A. Ross, Rawle & Henderson, Philadelphia, Pa., for defendant.

## MEMORANDUM

O'NEILL, District Judge.

Plaintiff Wilma Wood instituted this suit in the Court of Common Pleas claiming that defendant C.G. Studios discriminated against her on the basis of sex in violation of Section 5 of the Pennsylvania Human Relations Act, 43 P.S. § 955(a). Specifically, she claims that defendant failed to promote her and terminated her employment solely because it learned that she had undergone surgery to correct her hermaphroditic condition prior to working for defendant. Plaintiff also alleges that she has exhausted her administrative remedies.[1] Defendant removed the case to this court on the basis of diversity of citizenship. 28 U.S.C. § 1332.

Defendant moves for summary judgment; a response and a reply have been filed. I will grant the motion because I predict that the Supreme Court of Pennsylvania would find, as a matter of law, that discrimination on the basis of gender-corrective surgery does not constitute discrimination on the basis of sex under Section 5(a) of the PHRA.[2]

Section 5(a) of the Act provides:

It shall be unlawful discriminatory practice, unless based upon a bona fide occupational qualification ...:

(a) For any employer, because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individu-

1. The Pennsylvania Human Relations commission confirmed its No Cause Finding in a letter to Wood dated November 4, 1985. Plaintiff's Resp., Ex. E.

2. Defendant denies discriminating against plaintiff and contends that she was discharged for failure to follow instructions and to measure up to company standards. Defendant argues, however, that even assuming it had discriminated against plaintiff as she alleges she does not state a claim upon which relief may be granted under the PHRA.

al is the best able or most competent to perform the services required....

No Pennsylvania Court has addressed the issue of whether discrimination against a person who has undergone gender-corrective surgery could expose an employer to liability for sex discrimination under the PHRA.

The plain meaning of the term "sex", as it is used in the statute, would encompass discrimination against women because of their status as females and discrimination against males because of their status as males.[3] The history of the legislation and the caselaw show that the statute was intended to achieve equality between the sexes by preventing this type of discrimination.

The eradication of sex discrimination in employment was added as a purpose of the PHRA by a 1969 Amendment.[4] Significantly, the Legislature did not add sex discrimination to Section 5(a)'s list of unlawful discriminatory practices until 1978. There is no accompanying legislative history regarding the meaning of discrimination upon the basis of sex. However, the 1978 amendment appears to have been motivated by Pennsylvania's adoption of the Equal Rights Amendment, Pa. Const., Art. I, § 28 (1971) and enactment of implementing legislation, 1 Pa. C.S.A. § 2301 (1978). *See PHRC v. Mars Community*, 488 Pa. 102, 107, 410 A.2d 1246, 1248 (1980) (discussing Section 5(i), to which "sex" was added by the same amendment). Section 2301 and the E.R.A. Implementation Comment evidence the clear purpose of achieving equality between the sexes. For example, the purpose of Section 2301(c) is to insure "that the work of both women and men carries the same protection for their families". The purpose of Section 2301(d) is to provide "a general statement on which to base future interpretation of" statutes which limit employment to one sex in certain jobs. Given employment conditions at the time of the amendment, achieving equality primarily meant providing women with the same opportunities as men. For example, the statutes cited in the Comment which require reinterpretation are those which limit certain types of employment to males. Similarly, the example of how a licensing board can combat sex discrimination is by granting women cosmetologists the authority to treat men's hair.

The caselaw under the PHRA evaluates sex discrimination in terms of discrimination against women because of their status as females. The cases cited by the parties involve discrimination due to stereotypic concepts about a woman's ability to perform a job or due to a condition common to women alone. *E.g., General Electric Corp. v. PHRC*, 469 Pa. 292, 315, 365 A.2d 649, 661 (1976) (assumption based upon undifferentiated, stereotypic appraisal of women as a class is plainly discriminatory); *Anderson v. Upper Bucks Co. Area Vocational Technical School*, 30 Pa.Cmwlth. 103, 113, 373 A.2d 126, 131 (1977) (practice of excluding pregnancy, a disability unique to women, from disability coverage violates Section 5(a)).

There is no showing that the Act was intended to remedy discrimination against individuals because they have undergone gender-corrective surgery. In the absence of such a showing, I cannot conclude that the Supreme Court of Pennsylvania would give the term "sex" as used in the Act anything but its plain meaning.

I am further persuaded that the Supreme Court, if presented with the issue, would not include plaintiff within the language of the PHRA, by the established caselaw arising under Title VII. The Commonwealth Court recognizes Title VII cases as per-

---

**3.** *Webster's Third New International Dictionary*, p. 1081 (1981) defines "sex" as "one of the two divisions of organic esp. human beings respectively designated male or female."

**4.** Section 952(b) as amended states:

It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their ... sex ... and to safeguard their right to obtain and hold employment without such discrimination....

suasive authority on the subject of sex discrimination due to the substantial similarity between Section 2000e–2(a)(1) of Title VII and Section 5(a) of the PHRA.[5] *Leechburg Area School District v. PHRC,* 19 Pa.Cmwlth. 614, 618 n. 2, 339 A.2d 850, 853 n. 2 (1975).[6] The Title VII cases unanimously hold that Title VII does not extend to transsexuals nor to those undergoing sexual conversion surgery, and that the term "sex" should be given its traditional meaning. *See, Grossman v. Bernards Township Board of Education,* [1975] 11 E.P.D. (CCH) ¶ 10,686 (D.N.J.1975), *aff'd memo.,* 538 F.2d 319 (3d Cir.) *cert. denied,* 429 U.S. 897, 97 S.Ct. 261, 50 L.Ed.2d 181 (1976); *Ulane v. Eastern Airlines,* 742 F.2d 1081, 1085 (7th Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985); *Voyles v. Davies Medical Center,* 403 F.Supp. 456, 457 (N.D.Cal.1975), *aff'd memo.,* 570 F.2d 354 (9th Cir.1978); *Sommers v. Budget Marketing, Inc.,* 667 F.2d 748, 750 (8th Cir.1982); *Holloway v. Arthur Anderson & Co.,* 566 F.2d 659, 662 (9th Cir.1977); *Powell v. Read's Inc.,* 436 F.Supp. 369 (D.Md.1977); *Terry v. E.E. O.C., et al.,* 35 BNA F.E.P. Cas. 1395 (E.D. Wisc.1980).[7] These cases appear equally applicable to those who undergo gender-corrective surgery.

Plaintiff argues that the PHRA is a remedial statute and should be liberally construed. Remedial statutes, however, should be liberally construed only to achieve their purpose. Plaintiff has not provided this Court with any evidence that the PHRA's purpose includes remedying

discrimination against people because they have undergone gender-corrective surgery.

show that the individual is the best able to perform the services required); *Anderson,* 30 Pa.Cmwlth. at 109–113, 373 A.2d at 129–131 (Pennsylvania caselaw and PHRC Regulations clearly establish that classification based upon pregnancy is a sex classification). Neither the language of the statute nor the existing caselaw support the broader protection under PHRA for which plaintiff argues.

---

**5.** 42 U.S.C. 2000e–2(a)(1) provides:
(a) It shall be an unlawful employment practice for an employer
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

**6.** The Commonwealth Court will not follow Title VII where the PHRA clearly provides broader protection. *Harrisburg School Dist. v. PHRC,* 77 Pa.Cmwlth. 594, 599 and n. 3, 466 A.2d 760, 763 and n. 3 (1983) (PHRA expressly requires more of employers by requiring that they also

**7.** Title VII does not apply to men discriminated against because they are men. *E.g. Mitchell v. Smithkline Beckman Corp.,* C.A. No. 85–6045, slip op. (E.D.Pa. October 9, 1986) [Available on WESTLAW, DCT database].