527 Pa. 315 (1991)
591 A.2d 281
CIVIL SERVICE COMMISSION OF CITY OF PITTSBURGH, Appellant,
v.
COMMONWEALTH of Pennsylvania, PENNSYLVANIA HUMAN RELATIONS COMMISSION, Appellee.
Supreme Court of Pennsylvania.
Argued March 5, 1991.
Decided May 14, 1991.
*316 Joseph F. Quinn, Asst. City Sol., Pittsburgh, for appellant.
Elisabeth S. Shuster, William R. Fewell, Jr., Lorraine S. Caplan, Pennsylvania Human Relations Com'n, Pittsburgh, for appellee.
Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

*317 OPINION OF THE COURT
FLAHERTY, Justice.
In March of 1980, Perry DeMarco requested a transfer from a federally funded position with the City of Pittsburgh (hereinafter, "the City") to a regular, full-time position as a laborer in the Department of Parks and Recreation. The City informed DeMarco that he did not meet the Civil Service height-weight requirements for transfer to the regular City position of laborer, but that he would be allowed the transfer contingent upon his losing thirty-seven pounds in nineteen weeks. DeMarco failed to lose the weight required by the City and he was suspended without pay on August 19, 1980. Nonetheless, on or about October 24, 1980, DeMarco was called back to his position as a laborer, when the City discontinued use of the height-weight tables as a criterion for employment. DeMarco lost wages of $2,241.12 while he was on suspension, but he received $1,043.00 in unemployment benefits during this time.
DeMarco filed a complaint with the Pennsylvania Human Relations Commission (PHRC) on October 16, 1980 alleging that the City's failure to hire him for the laborer position constituted unlawful employment discrimination based upon his handicap, obesity. In July, 1983, PHRC found probable cause to credit the allegations of the complaint and conducted a public hearing in December of 1986. As noted by Commonwealth Court, there is no explanation of record for this extraordinary delay.
After a public hearing, PHRC found that the City had discriminated unlawfully against DeMarco on the basis of his handicap, obesity, ordered payment of full back pay with interest, and did not treat the unemployment compensation DeMarco received as an offset.
The City appealed to Commonwealth Court, arguing that PHRC erred in concluding that DeMarco's obesity was a handicap under the Pennsylvania Human Relations Act (PHRA) and that the commission erred in failing to offset the back pay award by the amount of unemployment compensation *318 which DeMarco received. Commonwealth Court affirmed the decision of PHRC, Judge Palladino dissenting, 124 Pa.Cmwlth. 518, 556 A.2d 933, and we granted allocatur.
Under this Court's decision in General Electric Corp. v. Pennsylvania Human Relations Commission, 469 Pa. 292, 365 A.2d 649 (1976), a complainant under the PHRA bears the initial burden of establishing a prima facie case. That burden is met in a case alleging discrimination because of a handicap by showing that the complainant "is a member of a protected [class], that he applied for a job for which he was qualified, that his application was rejected and that the employer continued to seek other applicants of equal qualification." Id., 469 Pa. at 304, 365 A.2d at 655-56.
The PHRA provides:
It shall be unlawful discriminatory practice . . . [f]or any employer because of the . . . non-job related handicap or disability of any individual to refuse to hire or employ such individual . . . if such individual is the best able and most competent to perform the services required. . . .
A "non-job related handicap or disability" is defined as:
[a]ny handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for. . . .
Act of October 27, 1955, P.L. 744, as amended, Act of 1974, P.L. 986, No. 318, 43 P.S. § 955(a). Because the PHRA does not define the term "handicap," in order to address the question of whether DeMarco is a handicapped person within the meaning of the PHRA, we must turn to the regulations for a definition of "handicapped person":

Handicapped or Disabled Person  includes the following:
(i) A person who:
(A) has a physical or mental impairment which substantially limits one or more major life activities;
(B) has a record of such an impairment; or

*319 (C) is regarded as having such an impairment.
(ii) As used in subparagraph (i) of this paragraph, the phrase:
(A) "physical or mental impairment" means a physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin, and endocrine or a mental or psychological disorder, such as mental illness, and specific learning disabilities.
(B) "major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

* * * * * *
(D) "is regarded as having an impairment" means has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer or owner, operator, or provider or a public accommodation as constituting such a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or has none of the impairments defined in subparagraph (i)(A) of this paragraph but is treated by an employer, or owner, operator, or provider of a public accommodation as having such an impairment
16 Pa.Code § 44.4.
Both PHRC and Commonwealth Court reasoned that DeMarco had proved that he was handicapped within the meaning of the PHRA (a required part of his prima facie case) in that he was regarded as having "an impairment . . . that does not substantially limit major life activities but that is treated by an employer . . . as constituting such a limitation." 124 Pa.Cmwlth. at 524, 556 A.2d at 936; In other words, PHRC and Commonwealth Court relied on the third clause in (ii)(D) of the regulations, cited above.
*320 As stated earlier, in order for a claimant to prevail under the PHRA on the basis of a claim that he was the victim of unlawful discrimination because of his handicap, he must first prove that he was handicapped within the meaning of the act. The regulations define "handicapped or disabled" as including the meaning that a person is handicapped if he is regarded as having a physical or mental impairment. The regulations go on to define the phrase "is regarded as having an impairment" as meaning that the complainant "has none of the impairments defined in subparagraph (i)(A) of this paragraph but is treated by an employer . . . as having such an impairment." The impairments in subparagraph (i)(A) must fit into one or more of three categories: "physiological disorder," a "cosmetic disfigurement," or "anatomical loss." Further, the impairment must affect one or more of the following body systems:
neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin and endocrine.
16 Pa.Code § 44.4.
A person who attempts to make a prima facie case on the basis that he is regarded as having a physical or mental impairment, then, must show that he is regarded as having a physiological disorder, cosmetic disfigurement or anatomical loss which affects the body systems set out above. There is nothing of record to indicate, however, that DeMarco's obesity, or any obesity, fits into one or more of these categories. In fact, the only evidence of record is that DeMarco's obesity was not a handicap. On direct examination, DeMarco testified as follows:
Q. Mr. DeMarco, during the time you performed the various functions at the Aviary, did you ever encounter any physical difficulties?
A. None at all.
Q. Did any of your supervisors reprimand you for inability to perform the functions of the job?
A. No.

*321 Q. On any occasion did you receive any other disciplinary action or any other kinds of reprimands or demerits while on the job.?
A. No.

* * * * * *
Q. Did [your supervisor] ever complain to you that your weight affected your ability to perform the functions of the job?
A. No.
N.T. 43a-44a. On cross-examination, DeMarco testified:
Q. Mr. DeMarco, in approximately July and August of 1980 did you have any problems breathing as a result of your weight?
A. No, I did not.
Q. In July and August, 1980 did you have pulmonary problems or lung disease, because of your weight?
A. No, I did not.
Q. In July and August, 1980 could you walk up steps without stopping?
A. Yes.
Q. In July and August, 1980 were you short of breath walking up steps?
A. No, I was not.
Q. Whenever you did your job in July and August, 1980, did you do your job without any bother to you; did your weight bother you in any way?
A. Not at all.
Q. In July and August, 1980 could you perform the full scope of your job as laborer?
A. Yes, I could.
Q. Do you have high blood pressure as a result of your weight?
A. No, I don't.
Q. In July or August, 1980, did you have diabetes as a result of your weight?
A. No, I didn't.

*322 Q. Your private doctor that you visited two times during that time, tell you you could not lose weight because of a thyroid condition or any condition?
A. No, he did not.
Q. Did he indicate just simply controlling your appetite would result in losing weight or exercising to lose weight?
A. He said I could use more exercise.

* * * * * *
Q. Do you consider yourself to be obese?
A. No, I don't.
Q. Do you consider your weight interfering with any life activities such as walking, breathing, things like that?
A. No, I don't.
Q. Do you have any thyroid problems or a thyroid condition that would cause you to be overweight?
A. No, I don't.
Q. Have you been told by any doctor you have a thyroid condition that caused you to be overweight?
A. No, I haven't.
Q. Just to reiterate, just to make sure I am clear; do you feel your weight interferes in any way with any life activities that you do whether it be breathing or doing sports, driving a car, in any way with any conditions?
A. No, ma'am, it does not.
N.T. 48a-51a.
Because DeMarco's obesity was not shown to be a physiological disorder, a cosmetic disfigurement, or an anatomical loss affecting his body systems, and there is no other evidence to indicate that obesity ever affects body systems,[1] DeMarco has not shown that obesity is a handicap within *323 the meaning of the PHRA. Commonwealth Court, therefore, was in error in concluding that DeMarco was regarded as having a handicap under the terms of the PHRA.
Order of Commonwealth Court is reversed.[2]
LARSEN, J., concurs in the result.
PAPADAKOS, J., files a dissenting opinion.
PAPADAKOS, Justice, dissenting.
I dissent. This is not a "handicap" case. Perry DeMarco filed a complaint with the Human Relations Commission alleging that the City of Pittsburgh's standard of height to weight was a condition of employment, that it was not job related, and that it "in effect imposes a disqualifying handicap and/or disability for those persons who did not conform to it". (R.R., p. 116.)
This practice, DeMarco alleged, was an unlawful discriminatory practice under the Pennsylvania Human Relations Act, 43 Pa.S. § 955(a), (b)(1) and (2), and he invoked the Commission's broad powers to eliminate the practice and to provide a remedy for the violation.
The Commission agreed that the practice was an unlawful discriminatory practice and awarded DeMarco back wages. It did not have to order the cessation of the practice because the City had been ordered to do so in a collateral judicial proceeding.
Under such a case the question becomes  what was DeMarco's burden in establishing a prima facie case of discrimination? The Majority has applied the General Electric Corp. v. Pennsylvania Human Relations Commission, 469 Pa. 292, 365 A.2d 649 (1976), standard (see page 3 of Majority Opinion) as an unwavering absolute and requires DeMarco to prove that he is a member of a protected class, that he applied for a job for which he was qualified, that his application was rejected, and that the City continued *324 to seek other applicants of equal qualifications. Some of these considerations are simply not applicable in this factual situation and as footnote 11 of General Electric Corp. points out these considerations are not required where differing factual situations call for different specifications of proof.
In my view, DeMarco was required to establish that the City had a binding, non-job related standard which it was using to deny him employment, that he was qualified for the job, that he was denied employment because of the standard, and that the City continued to seek other applicants of equal qualifications. I believe that DeMarco has established each of these facts and, taken together, they establish that the City discriminated against him concerning the conditions of his employment which is in violation of 43 Pa.S. § 955(a).
To analyze this claim on whether DeMarco has a handicap is to change the nature of his complaint. He does not allege that he is handicapped. Rather, he argued that the City's weight standard was a discriminatory practice because it is non-job related and that its effect is to impose an illegal handicap on him. I agree and would affirm the order of the Commonwealth Court.
NOTES
[1] In fact, the only evidence of record is that obesity is not a handicap. We express no opinion as to whether obesity which is self-imposed, as opposed to that which may be caused by a systemic malfunction, is a handicap within the PHRA, and we also express no opinion as to whether the provisions of 16 Pa.Code § 44.4, (i)(C) or (ii)(D) are valid regulations within the parameters of the PHRA, which seems to require that a person is protected by the act only if he actually suffers from a non-job related handicap or disability.
[2] Because of our disposition of this case, we do not discuss the City's other claim that PHRC erred in failing to offset DeMarco's unemployment benefits against the back pay award.