Andria Adams DOBRE

v.

**NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK").**

**Civ. A. No. 93–3504.**

United States District Court, E.D. Pennsylvania.

Dec. 1, 1993.

Hyman Lovitz, Sidney L. Gold, Lovitz & Gold, Philadelphia, PA, for plaintiff.

Joseph J. Costello, Francis M. Milone, Morgan, Lewis and Bocius, Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are the defendant National Railroad Passenger Corporation's ("AMTRAK") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the Alternative to Strike Certain Demands, the plaintiff Andria Adams Dobre's ("Dobre") response and AMTRAK's reply.

### I. FACTUAL BACKGROUND

Dobre, a transsexual, was employed by AMTRAK from May, 1989 until March 28, 1990. When she[1] was hired by AMTRAK, Dobre presented herself as a man. After several months, she informed her supervisors that she was receiving hormone injections in order to begin the process of becoming female. However, she does not aver that she

---

1. Because the plaintiff refers to herself as a female in her written submissions, the Court will refer to her as "she" or "her" throughout this opinion.

actually underwent sex-reassignment surgery during the period that she was employed by AMTRAK. Rather, plaintiff asserts that she was discriminated against because of her new gender while in the process of transforming her body to conform with her psychological sexual identity.

Dobre contends that after she informed her supervisors of the hormone treatments she was discriminated against in the following respects, among others: (1) she was told that a doctor's note was required in order to dress as a female; (2) she was required to dress as a male; (3) she was not permitted to use the women's restroom; (4) the plaintiff's supervisors referred to her by her male name; and (5) her desk was moved out of the view of the public. On June 30, 1993, she filed a complaint alleging in Count I that AMTRAK's actions constitute sex-based discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2, and, in counts II and III respectively, that its actions constitute sex-based discrimination and handicap discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Cons.Stat.Ann. § 955(a). AMTRAK moves to dismiss the plaintiff's complaint.

## II. *DISCUSSION*

### A. *Standard*

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed.R.Civ.P. 8(a). Defendant has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering a motion to dismiss, this Court shall take all allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff. *H.J. Inc. v. Northwest Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). The complaint shall only be dismissed if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)); *Conley v. Gibson*, 355 U.S. 41,

45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### B. *Applying the Standard to Count I: The Title VII Claim*

■ Title VII prohibits an employer from taking adverse employment actions because of an employee's "sex." 42 U.S.C. § 2000e–2(a)(1). The key inquiry in defining the term "sex" is, of course, to ascertain Congress' intent. *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1084 (7th Cir.1984), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985). It is well established that the term "sex" is to be construed narrowly, according to its plain meaning. *Ulane*, 742 F.2d at 1085–86; *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748, 750 (8th Cir.1982); *Wood v. C.G. Studios, Inc.*, 660 F.Supp. 176, 178 (E.D.Pa.1987); *Grossman v. Bernards Township Bd. of Educ.*, 1975 WL 302, at *4 (D.N.J. Sept. 10, 1975), *aff'd mem.*, 538 F.2d 319 (3d Cir.), *cert. denied*, 429 U.S. 897, 97 S.Ct. 261, 50 L.Ed.2d 181 (1976).

■ The plaintiff avers in her complaint that AMTRAK engaged in unlawful discriminatory practices, in violation of § 2000e–2(a)(1), "solely because of [the plaintiff's] female gender." (Complaint ¶ 22). The term "sex" as used in § 2000e–2(a) is not synonymous with the term "gender". *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 662 (9th Cir.1977) (rejecting appellant's argument that Title VII prohibits discrimination based upon gender, which would encompass discrimination based upon transsexualism). The term "sex" in Title VII refers to an individual's distinguishing biological or anatomical characteristics, whereas the term "gender" refers to an individual's sexual identity. *Holloway*, 566 F.2d at 662–63.

■ Accordingly, an employer may not discriminate against a female because she is *female*. *Ulane*, 742 F.2d at 1087; *Holloway*, 566 F.2d at 663. However, neither the plaintiff's memorandum of law nor the Court's independent research has disclosed any case broadening Title VII so as to prohibit an employer from discriminating against a male because he wants to become a female. Simply stated, Congress did not intend Title VII

to protect transsexuals from discrimination on the basis of their transsexualism. *Ulane,* 742 F.2d at 1087; *Sommers,* 667 F.2d at 750; *Holloway,* 566 F.2d at 663; *see also Wood,* 660 F.Supp. at 178 (collecting cases).

Although a transsexual cannot maintain a Title VII action *qua* transsexual, as the Ninth Circuit Court of Appeals recognized in *Holloway,* "transsexuals claiming discrimination because of their *sex,* male or female, would clearly state a cause of action under Title VII." 566 F.2d at 664 (emphasis added). Thus, if AMTRAK considered Dobre to be female and discriminated against her on that basis (i.e. treated her less favorably than male employees), then Dobre would be able to maintain a Title VII action as a *female.* See *Ulane,* 742 F.2d at 1087; *Holloway,* 566 F.2d at 664.

In *Grossman,* the plaintiff, a teacher, had undergone hormone treatment and sex-reassignment surgery. 1975 WL 302, at *1. After learning that the plaintiff had undergone the procedures, her employer discharged her from her job. *Id.* The plaintiff brought suit alleging, *inter alia,* that her discharge was in violation of Title VII. *Id.* The defendant moved to dismiss the complaint pursuant to Rule 12(b)(6). *Id.*

The court concluded that even assuming the plaintiff had become a female by virtue of the sex-reassignment surgery, "it is nevertheless apparent on the basis of the facts alleged by the plaintiff that she was discharged ... not because of her status as a female, but rather because of her change in sex...." *Id.* at *4. More specifically, the court concluded that "[n]o facts are alleged to indicate, for example, that plaintiff's employment was terminated because of any stereotypical concepts about the ability of females to perform certain tasks ... nor because of any condition common only to women." *Id.* (citations omitted); *see also Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (recognizing that Title VII's prohibition of sex-based discrimination is designed to eliminate barriers to womens' advancement resulting from lingering disparate treatment in the workplace). Accordingly, the *Grossman* court granted the defendant's

motion to dismiss. The court's decision was affirmed by the Third Circuit Court of Appeals. 538 F.2d 319 (3d Cir.), *cert. denied,* 429 U.S. 897, 97 S.Ct. 261, 50 L.Ed.2d 181 (1976).

The Court need not determine the plaintiff's sex during her employment with AMTRAK, as a matter of law, to resolve the present motion. Rather, the Court will assume for purposes of the present motion that the plaintiff was a female during her employment with AMTRAK. Still, even when viewed in the most favorable light, the allegations in the complaint do not support a claim that the plaintiff was discriminated against as a *female.*

As in *Grossman,* the acts of discrimination alleged by the plaintiff were not due to stereotypic concepts about a woman's ability to perform a job nor were they due to a condition common to women alone. If the plaintiff was discriminated against at all, it was because she was perceived as a male who wanted to become a female. Indeed, the complaint belies a contention that AMTRAK discriminated against the plaintiff because she was female; it states *"[f]rom the time she informed her superiors of her intentions to undergo such a treatment until the date of* her resignation, Dobre was subjected to various incidents of ... discriminatory conduct." (Complaint, ¶ 13) (emphasis added). Accordingly, the facts as alleged fail to state a claim upon which relief may be granted.

## C. *Count II: Sex–Based Discrimination Under the PHRA*

 Section 5(a) of the PHRA provides in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification....

(a) For any employer, because of the ... sex ... of any individual ... to bar or discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able or most competent to perform the services required.

43 Pa.Cons.Stat.Ann. § 955(a) (Purdon 1991 & Supp.1993). The Pennsylvania Supreme Court has not addressed whether the term "sex" in the PHRA is broader than the term "sex" under Title VII, so as to encompass claims of discrimination based upon transsexualism. However, in *Wood,* a court within this circuit addressed that precise issue.

Analyzing the legislative history of section 5(a) and relevant Pennsylvania caselaw, the *Wood* court concluded that the term "sex" under section 5(a) was to be given its plain meaning. *Wood,* 660 F.Supp. at 178. The Court also recognized that the Title VII precedents under § 2000e–2(a) serve as persuasive authority in interpreting section 5(a) of the PHRA. *Id.* at 177–78. As the court stated in *Wood,* "[t]he Title VII cases unanimously hold that Title VII does not extend to transsexuals nor to those undergoing sexual conversion surgery." *Id.* at 178; *see also Sommers,* 667 F.2d at 749–50 (holding that Title VII does not apply to those undergoing hormone treatments in preparation for possible sexual conversion surgery).

The Court concludes that *Wood* provides the persuasive law. Thus, to the extent that the plaintiff has alleged discrimination on the basis of transsexualism, she has failed to state a claim upon which relief may be granted. To the extent she claims that she was discriminated against as a female, her claim fails for the reasons set forth, *supra.*

## D. *Count III: Handicap Discrimination Under the PHRA*

Section 5(a) also prohibits discrimination on the basis of an individual's non-job related handicap or disability. 43 Pa.Cons.Stat.Ann. § 955(a) (Purdon 1991 & Supp.1993). A "non-job related handicap" is "a handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in, or has been engaged in." 16 Pa.Code § 44.4 (1992). A "handicapped or disabled person"

is one who has "a physical or mental impairment which substantially limits one or more major life activities; a record of an impairment; or who is regarded as having an impairment." *Id.* § 44(i). The plaintiff argues that she has stated a claim in that her transsexualism constitutes a physical or mental impairment which substantially limits a major life activity. Alternatively, she argues that she is perceived as having such an impairment.

### 1. *Transsexualism as a Physical or Mental Impairment*

A "physical or mental impairment" means, *inter alia,* "a physiological disorder or condition ... or a mental or psychological disorder, such as mental illness, and specific learning disabilities." *Id.* § 44.4(ii)(A). The plaintiff concedes that there are no cases decided under the PHRA to support her position that transsexualism is a physical or mental impairment. (Plaintiff's Memorandum, at 6). Nevertheless, she argues that transsexualism is recognized as a disorder by the American Psychiatric Association.[2] Moreover, she argues that Pennsylvania's regulations are modeled after the regulations promulgated under the federal Rehabilitation Act, 29 U.S.C. § 701 *et seq.,* and caselaw under the Rehabilitation Act supports the conclusion that transsexualism is a "physical or mental impairment" under the Rehabilitation Act. *Id.* § 44.4 comment (noting that Pennsylvania's regulations are adopted verbatim from United States Dep't of H.E.W.'s section 504 regulations); *see also Blackwell v. U.S. Dep't of Treasury,* 639 F.Supp. 289, 290 (D.D.C.1986) (transvestitism is a protected handicap under Rehabilitation Act); *Doe v. United States Postal Serv.,* 37 Fair Empl. Prac.Cas. (BNA) 1867, 1869 (D.D.C.1985) (transsexualism is a protected handicap under Rehabilitation Act).

The defendant, on the other hand, correctly recognizes that not every diagnosable disorder constitutes an "impairment" under § 44.4. *See, e.g., School Dist. of Philadel-*

2. A transsexual is a person who has a sense of discomfort and inappropriateness about his or her anatomical sex and wishes to be rid of his or her genitals and live as a member of the opposite sex. American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders § 302.50 (3d ed. rev. 1987). Transsexualism is also known as gender dysphoria. *See Doe v. Boeing Co.,* 121 Wash.2d 8, 846 P.2d 531, 533 (1993).

*phia v. Freidman,* 96 Pa.Cmwlth. 267, 507 A.2d 882, 885–86 (1986) (holding that plaintiff's "neurotic compulsion for lateness" did not constitute a mental impairment under § 44.4). Thus, the fact that transsexualism is a diagnosable condition does not necessarily lead to the conclusion that it is an "impairment" under § 44.4.

When confronted with questions of interpretation under the PHRA and the regulations promulgated thereunder, Pennsylvania's courts have looked to cases decided under analogous statutory schemes in other states as persuasive authority. *See, e.g., McCloskey v. Nu–Car Carriers, Inc.,* 387 Pa.Super. 466, 564 A.2d 485, 488 (1989), *appeal denied,* 525 Pa. 585, 575 A.2d 115 (1990). In *Sommers v. Iowa Civil Rights Comm'n,* 337 N.W.2d 470 (Iowa 1983), Iowa's Supreme Court rejected a claim that transsexualism was a "physical or mental impairment" under a regulatory framework modeled after the Rehabilitation Act and, therefore, identical to that employed in Pennsylvania. First, the court rejected the plaintiff's contention that transsexualism constituted a physical impairment.[3] *Id.* As to the plaintiff's claim that transsexualism constitutes a "mental impairment," the court concluded that transsexualism lacks the *inherent* propensity to limit major life activities of the specific enumerated examples of mental impairments in the regulation. *Id.* Accordingly, the court held that the legislature did not intend to include transsexualism as a protected handicap. *Id.*

As in *Sommers,* the plaintiff did not allege in the complaint that she suffers from any organic disorder of the body. Thus, she is not physically impaired. Further, the principle of ejusdem generis relied upon by the Court in *Sommers* applies with equal force under the PHRA. *See* 1 Pa.Cons.Stat.Ann. § 1903(b) (Purdon Supp.1993) ("General words shall be construed to take their meanings from preceding words."); *Pennsylvania Indus. for the Blind & Handicapped v. Larson,* 496 Pa. 1, 436 A.2d 122, 123 (1981).

In defining "mental impairment," the regulations specifically include such disorders as "mental or psychological disorder, such as mental illness, and specific learning disabilities." 16 Pa.Code § 44.4(ii)(A) (1992). These disorders, unlike transsexualism, are inherently prone to limit major life activities. *See Sommers, supra,* 337 N.W.2d at 475. Indeed, the plaintiff avers in her complaint that her transsexualism "in no way interfered with [her] ability to perform her functions as an employee for AMTRAK." (Complaint, ¶ 29). That transsexualism is distinguishable from the specifically enumerated mental impairments in § 44.4 in terms of its inherent effect on major life activities weighs heavily in favor of concluding that the legislature did not intend to include transsexualism to as a protected handicap.

Moreover, the express language of the Rehabilitation Act undercuts the plaintiff's claim. The plaintiff's reliance on *Doe* and *Blackwell,* which were decided under the Rehabilitation Act, overlooks the recent amendment to the Act, which unambiguously excludes transsexualism from the definition of the phrase "individual with a disability." Pub.L. 102–569, § 102, 106 Stat. 4349 (1992) (codified at 29 U.S.C. § 706(8)(F)(i)). As the defendant correctly recognizes, this amendment did not effectuate a substantive change in the law, but rather, merely "clarifie[d] the original intent of Congress as to the parameters of the definition of disabled individual under [the Rehabilitation Act]." *Winston v. Maine Technical College Sys.,* 631 A.2d 70, 74 (Maine 1993). Thus, Pub.L. 102–569 reveals that *Doe* and *Blackwell* were contrary to Congress' intent. For the foregoing reasons, the Court holds that the plaintiff has failed to state a claim upon which relief may be granted under the PHRA.

### 2. Transsexualism as a Perceived Handicap

■ The plaintiff's final argument is that she has stated a claim under the PHRA

---

**3.** The definition of "physical impairment" under the regulation at issue in *Sommers* was identical to § 44.4. The *Sommers* court noted that the relevant portions of the definition included " 'physiological disorder[s] or condition[s]' or 'anatomical loss.' " 337 N.W.2d at 475. The court concluded that this definition "is confined to the characteristics of the body organs and whether such organs are normal and healthy." *Id.*

because she was regarded as having an impairment by AMTRAK. 16 Pa.Code § 44.-4(i)(C) (1992). The phrase "is regarded as having an impairment" means that an individual

> has a physical or mental impairment that does not substantially limit major life activities but that is treated by an employer ... as constituting a limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward the impairment; or has none of the impairments defined in subparagraph (i)(A) but is treated by an employer ... as having an impairment.

*Id.* § 44.4(ii)(D). The plaintiff's position is that she was "regarded as having an impairment" under the third prong of the definition in § 44.4(ii)(D), the so-called "perceived impairment" prong. More specifically, relying upon *Civil Service Comm'n v. Pennsylvania Human Relations Comm'n*, 124 Pa.Cmwlth. 518, 556 A.2d 933, 936 (1989), the plaintiff asserts that she can state a claim under the "perceived impairment" prong even if her transsexualism does not constitute an actual physical or mental impairment under the PHRA and accompanying regulations.

The plaintiff's argument overlooks the fact that the Pennsylvania Supreme Court reversed the Commonwealth Court's decision in *Civil Service Comm'n* on this very issue. *Civil Service Comm'n v. Pennsylvania Human Relations Comm'n*, 527 Pa. 315, 591 A.2d 281, 284 (1991). The Pennsylvania Supreme Court was presented with the question of whether an individual's prospective employer "regarded him as having an impairment" under the third prong of § 44.4(ii)(D) due to the individual's obesity. *Id.* 591 A.2d at 282. In language that is apropos to the present case, the court concluded that "DeMarco has not shown that obesity is a handicap within the meaning of the PHRA. Commonwealth Court, therefore, was in error in concluding that DeMarco was regarded as having a handicap under the terms of the PHRA." *Id.* 591 A.2d at 284. Thus, in *Civil Service Comm'n*, the Pennsylvania Supreme Court drastically narrowed the scope of the PHRA by interpreting the third prong of § 44.4(ii)(D) to require proof an actual impairment. The court's reasoning applies with equal force to claims based upon a mental impairment.

Whether the Pennsylvania Supreme Court's holding in *Civil Service Comm'n* comports with the intent of Pennsylvania's General Assembly is not for the Court to decide. The Court is bound to follow the instructions of Pennsylvania's Supreme Court as to its interpretation of Pennsylvania law. Accordingly, having concluded that transsexualism is not an actual "physical or mental impairment" under § 44.4, the Court must also conclude that the plaintiff cannot state a claim based upon § 44.4(ii)(D).

An appropriate Order follows.

### *FINAL JUDGMENT*

AND NOW, this 30th day of November, 1993, upon consideration of the Defendant National Railroad Passenger Corporation's ("AMTRAK") Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), IT IS HEREBY ORDERED that the Defendant's Motion is **GRANTED.**

IT IS FURTHER ORDERED that:

(1) the Plaintiff's Complaint is **DISMISSED;** and

(2) the Defendant's Motion to Strike Certain Demands is **DENIED** as moot.