## Cook v. Wirtz

*Jere Krakoff,* for plaintiffs.
*Michael L. Magulick* and *Arnd N. von Waldow,* for defendant.

ROSS, *J.,* September 3, 1996—The court has before it an oral motion for compulsory nonsuit made by defendant, Dr. Paul Wirtz, at the close of the plaintiffs' case: Pa.R.C.P. 230.1. Defendant asserts that, on the basis of evidence adduced on behalf of plaintiffs, Clayton Cook (now deceased) and his widow, Jean Cook, have failed to establish a right to relief. Specifically it is argued that they are not parties within the protected class entitled to bring the instant suit and that plaintiffs have not presented evidence sufficient to establish that Dr. Wirtz refused dental treatment to them after learning that they had, without taking precautions, cared for their AIDS-infected son in one of the months before his death. Defendant also contends that plaintiffs have

not established a right to recover compensatory and punitive damages.

A nonsuit is proper only if the court, after viewing the evidence and all reasonable inferences incidental thereto in the light most favorable to the complainants, could not reasonably conclude that the elements of a cause of action have been established. *Liles v. Balmer,* 439 Pa. Super. 238, 246-47, 653 A.2d 1237, 1241 (1994), *appeal denied,* 541 Pa. 640, 663 A.2d 692 (1995). Thus, the nonsuit motion tests not whether plaintiffs should ultimately prevail in this action but whether they have presented evidence which, if believed, is sufficient to support their claim.

The plaintiffs in their suit against Dr. Wirtz, a dentist, under the Pennsylvania Human Relations Act of October 27, 1955, P.L. 744, §5, 43 P.S. 955(h)(6)(i)(1), asserted that the defendant dentist, once he learned that plaintiffs cared for their AIDS-infected son during the last months of his life, "unjustly" terminated their dental treatment, closed his dental office to them and refused to provide dental treatment to plaintiffs, who were already his patients. They alleged that the termination humiliated them and caused overwhelming emotional pain, sadness, depression, stress and anxiety for which they seek compensatory damages. They also claim punitive damages for what they aver was outrageous conduct by defendant.

Defendant, called to testify by plaintiffs, pleaded and testified to no refusal to provide dental treatment to plaintiffs. His pleadings and testimony asserted that plaintiffs terminated his services because they became aware of his office practice that required information about exposure to infectious diseases to be noted in his records and registration slips.

## THE EVIDENCE ADDUCED BY PLAINTIFFS

Plaintiffs utilized their own testimony (Clayton Cook testified by deposition before his death), that of their daughter and of health care specialists as well as the testimony of Dr. Wirtz called as for cross-examination. The court, being cognizant of the motion before it, will epitomize the testimony for the sole purpose of weighing its sufficiency to support a cause of action. The court will not finally resolve credibility issues nor inconsistencies in evidence on this motion for nonsuit but any conflicts in testimony and inferences will be resolved in plaintiffs' favor.

Health specialists gave testimony on behalf of plaintiffs as to the fact that there have been no "identified cases" of HIV infection by patient to health care provider if universal protection precautions (gown, surgical gloves, masks and goggles) were taken (in the absence of needle-stick). Dr. Wirtz uses such precautions. However, surgical gloves in 10 percent of all cases of use do not prevent the seepage through them of blood or bodily fluids.

Plaintiffs testified that after their son's death, Dr. Wirtz treated the wife from March 1991 to October 1991. On October 24, 1991, defendant completed treating Mrs. Cook and told her he was aware of her son's death from AIDS. (J. Cook dep. 27-34.) Clayton Cook was treated thereafter on October 29, 1991. On November 4, 1991, he volunteered the information to Dr. Wirtz that he and his wife had cared for their son for six months prior to his death and given him unprotected care for a one-month period when they were unaware of his AIDS infection. Wirtz told Mr. Cook that plaintiffs should be tested for HIV infection. (C. Cook dep. 70,

118-19.) Mr. Cook left the office after making an appointment to complete root canal treatment.

The next day, Mr. Cook went back early in the morning and spoke with Dr. Wirtz at the dental office parking lot. His tooth had flared up and he wished also to make sure Dr. Wirtz would continue to treat him. (C. Cook dep. 123-26.) Wirtz said he would continue treatment but that plaintiffs should be HIV tested. (C. Cook dep. 126-27.)

The morning of November 6, 1991, Dr. Wirtz telephoned and left a message on the answering machine. When Mr. Cook telephoned back, Dr. Wirtz told Mr. Cook he would no longer treat the plaintiffs. (C. Cook dep. 131; Tr. 102-103, 108.) Then he told Mrs. Cook he would not put his staff at risk but that he would treat the Cooks if they would be tested for HIV infection. He referred the Cooks to other dentists who would treat "people like you."

The Cooks went to Dr. Wirtz's office, canceled their appointments and demanded and received their records. They were shortly thereafter treated by another dentist not recommended by defendant.

Jean Cook and her daughter testified about the pain and humiliation engendered by the last encounters with Dr. Wirtz.

Dr. Wirtz was called by plaintiffs as for cross-examination and testified he knew from late 1990 or early 1991 that plaintiffs' son had died from AIDS and that plaintiffs had cared for him in his illness. He had garnered this information from Clayton Cook's sister, Marian Repine. It is Dr. Wirtz's testimony that at the time of the last visits and the telephone call of November 6, 1991, he asked plaintiffs to permit him to note in his dental records that their son died from AIDS while they were caring for him. Dr. Wirtz testified he never

stated (admitted by Mrs. Cook) nor believed that plaintiffs were HIV positive.

Summarizing this evidence and inferences in the light most favorable to plaintiffs, Dr. Wirtz treated plaintiffs without incident, at a time when he knew of their son's death from AIDS, until he learned that they had without protection for a period of one month cared for their dying son. Upon learning of their exposure to the son's bodily fluids, he permitted Mr. Cook to make a further appointment, told him subsequently he would treat plaintiffs if HIV tested, telephoned them to say he would not treat them but then told Mrs. Cook that he would treat them if they were tested for HIV and that the information would be recorded on their dental records.

## ISSUE

Is the plaintiffs' evidence, if believed, sufficient to support the necessary elements of an action under the Pennsylvania Human Relations Act of October 27, 1955, *supra,* §5, 43 P.S. 955(i)(1), which makes it unlawful for an owner of a place of public accommodation to "deny any person because of his . . . handicap or disability . . . either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such place of accommodation . . . ?"

## PUBLIC ACCOMMODATION

Defendant conceded that his office is a place of public accommodation. Therefore, he has not preserved this as an issue in this case.

The court notes that a public accommodation is defined as one "which is open to, accepts or solicits the patronage of the general public": Pennsylvania Human Relations Act of October 27, 1955, *supra,* §4, 43 P.S.

954(1). The section lists types of public accommodations such as clinics or hospitals but the list is not exhaustive.

No Pennsylvania case has held a private dental office to be a place of public accommodation. Under a similar statute citing clinics and hospitals as places of public accommodation, a long line of New York appellate courts has held that private dental offices operating on an appointment-only basis are not places of public accommodation. *Schulman v. State Division of Human Rights,* 641 N.Y.S.2d 134, 135 (N.Y. App. Div. 1996); *Lasser v. Rosa,* 634 N.Y.S.2d 188, 189 (N.Y. App. Div. 1995); *Cahill v. Rosa,* 632 N.Y.S. 614, 615 (N.Y. App. Div. 1995). The issue of public accommodation in the case at hand was not preserved and will not be resolved.

## PROTECTED CLASS

Plaintiffs have the burden of proving they are within the statutorily protected class. *Civil Service Commission v. Human Relations Commission,* 527 Pa. 315, 320, 591 A.2d 281, 283 (1991).

The Pennsylvania Human Relations Act of October 27, 1955, *supra,* §§3, 4, 43 P.S. 953, 954(p)(2)(3), defines the classes protected from discrimination as those with "a record of such impairment" or "being regarded as having such impairment." HIV infection is an impairment under the Act because it substantially limits major life activities, such as procreation, and the risk of transmission through sexual intercourse is high. *Cain v. Hyatt,* 734 F. Supp. 671, 678 (E.D. Pa. 1990). This is true even if the infection is asymptomatic. *Doe v. District of Columbia,* 796 F. Supp. 559, 565 (D.D.C. 1992).

Since the Cooks were not HIV- or AIDS-infected in 1991, the court must consider whether they are "re-

garded as having such an impairment that substantially limits a life activity": Pennsylvania Human Relations Act of October 27, 1955, *supra,* §4, 43 P.S. 954(p)(3). "Having such an impairment" is defined as having "none of the impairments" which substantially limit major life activities but are "treated by . . . [a] provider of such a public accommodation as having such impairment." 16 Pa. Code §44.4(ii)(D). See also, *Civil Service Commission v. Human Relations Commission, supra* at 319, 591 A.2d at 282-83.

The question then is presented whether Dr. Wirtz, regardless of belief or declaration, treated the Cooks as if they had an HIV infection. In deciding the question for purposes of nonsuit, one must accept the Cooks' testimony as opposed to that of Dr. Wirtz. Once Dr. Wirtz learned of their unprotected care of their son for one month in the six months of their care given before he died, defendant told Mr. and Mrs. Cook he would continue to treat plaintiffs only if they submitted to HIV testing as information to be noted in their dental records.

Accepting the Cooks' testimony, the court must conclude that Dr. Wirtz perceived them as potentially HIV positive and, after months of unconditional treatment, conditioned future treatment on their submission to HIV testing.

They are within the protected class.

## SUFFICIENT EVIDENCE TO SUPPORT THE SUIT

Defendant raised the issue whether the Cooks adduced sufficient evidence of discrimination by Dr. Wirtz to support their suit.

The Cooks claim defendant refused to treat them once he perceived them as potentially HIV-infected but both Mr. and Mrs. Cook testified that Dr. Wirtz said on November 5 and November 6, 1991, that he would treat the Cooks if they were HIV tested. The question then devolves upon the issue whether a dental health care provider as an office policy may require medical information including testing for informational purposes relevant to the provision of services and for protection of the staff as a condition to future treatment.

The Federal Americans with Disabilities Act indicates that criteria may not be used to screen out a protected class unless necessary to provide the service but leaves open the question whether testing for informational purposes is valid. Burris, Dalton, Miller et al., *AIDS Law Today,* Yale University Press, New Haven & London, 1992, p. 310.

If the office of Dr. Wirtz is a public accommodation, then an unconditional refusal to treat the Cooks on the basis of potential HIV infection would be an action barred by the statute. Both Cooks' testimonies, however, are that Dr. Wirtz told each that he would treat her and her husband if they took a test screening them for HIV infection, the results of which would be placed in office records.

Medical providers as a matter of office policy to ensure proper treatment, may request health information which bears a reasonable relationship to treatment. A diabetic may not heal. A person afflicted with hemophilia might bleed to death. Treatment depends upon accurate information as to the health situation of the patient. It is reasonable to request relevant information. In *Doe v. Kahala Dental Group,* 808 P.2d 1276, 1277 (Haw. 1991), a private dentist conditioned treatment upon the patient's disclosure whether or not he was HIV-infected

because the information would affect the course of treatment and affect precautions to be taken by the staff. Since the subsequent refusal of services was based upon the failure to furnish relevant medical information, a dismissal of the discrimination suit was proper.

The unprotected care of their AIDS-infected son was a risk to the future health of plaintiffs. Once he was apprised of this risk to their health, it was not unreasonable for Dr. Wirtz to request information which would have some bearing on future treatment. He might have done so as a matter of good office policy had the son died of tuberculosis or any other infectious disease transmitted person to person. The Cooks could have received future treatment, had this information been furnished, upon which the course and type of treatment might depend.

The court, therefore, cannot conclude that the Cooks were denied treatment by reason of their perceived disability. It was reasonable for Dr. Wirtz, in light of their high-risk exposure, to condition future treatment upon submission of information relevant thereto, here an HIV test.

A nonsuit will be granted on this ground.

## DAMAGES

### 1. Compensatory Damages

Plaintiffs asserted their right to damages to compensate them for their emotional harm, humiliation, emotional pain, sadness, depression, stress and anxiety which they allegedly suffered by reason of defendant's actions. There was no physical impact upon their bodies or that of a loved one and no medical testimony.

Pennsylvania has authorized the award of damages of the plaintiffs for humiliation and mental anguish

under the Pennsylvania Human Relations Act of October 27, 1955, *supra,* §12, 43 P.S. 962(c); *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 459, 387 A.2d 70, 73 (1978). Recovery may also be had under the statute for these items and the loss of life's pleasures. *Griffiths v. CIGNA Corporation,* 857 F. Supp. 399, 409 (E.D. Pa. 1994).

The power to award statutory damages is not based upon the independent torts of negligent or intentional infliction of emotional distress and thus does not carry their concomitant strict burdens of proof by way of medical evidence or proof of impact. See *Taylor v. Central PA Drug & Alcohol Services Corp.,* 890 F. Supp. 360, 376 (M.D. Pa. 1995); *Durko v. OI-NEG. TV Products,* 870 F. Supp. 1278, 1284 (M.D. Pa. 1994); *Griffiths v. CIGNA,* 857 F. Supp. 399, 409 (E.D. Pa. 1994). Nor is medical testimony required in cases where the harm is intangible, such as mental anguish, humiliation, or injured feelings. *Shelton v. Evans,* 292 Pa. Super. 228, 233-34, 437 A.2d 18, 21 (1981).

Therefore, the court finds no basis for nonsuit in the presentation of the case for compensatory damages.

With reference to the question of the lack of proof of physical impact or medical evidence, there may be difficulty in segregating those damages suffered as a result of plaintiffs' contact with Dr. Wirtz from those resulting from their son's death, but difficulty is not a reason to grant a nonsuit.

## 2. *Punitive Damages*

The statute contains no provision for punitive damages but authorizes courts to give "any legal or equitable relief as the court deems appropriate." Human Relations

Act of October 27, 1955, *supra,* §12, 43 P.S. 962(3); *Gallo v. John Powell Chevrolet Inc.,* 779 F. Supp. 804, 816 (M.D. Pa. 1991); *Lubin v. American Packaging Corporation,* 760 F. Supp. 450, 452 (E.D. Pa. 1991); *Keck v. Commercial Union Insurance Company,* 758 F. Supp. 1034, 1039-40 (M.D. Pa. 1991). There may be cases in which punitive damages are an appropriate relief under the statute.

Punitive damages are intended to punish defendants for past outrageous and malicious behavior done with bad motive or with reckless indifference to the interests of another and to deter such future conduct. *Medvecz v. Choi,* 569 F.2d 1221, 1226 (3rd Cir. 1977); *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 169, 494 A.2d 1088, 1096 (1985); *Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 747 (1984).

The standards as to outrageousness are high. The Cooks claim Dr. Wirtz knew that they were emotionally distraught after he talked with Mr. Cook on November 4, 1991, and should have known that his requirement of no treatment without testing would have inflicted additional harm to them by reason of their perceived stigmatization. Dr. Wirtz defends his action as advice to patients, necessary for good dental practice and protection of his staff.

There is sufficient evidence before the court that it might find punitive damages are a possibility but the court would in its final determination be cognizant of the high burden of proof placed upon plaintiffs as to outrageousness.

For the reasons set forth above, a nonsuit will be granted by reason of the failure of plaintiffs to present sufficient evidence to support their claim and on no other grounds.

## ORDER

And now, September 3, 1996, upon motion for compulsory nonsuit by defendant, Dr. Paul Wirtz, after presentation of the evidence of plaintiffs, Clayton Cook (now deceased) and Jean Cook,

(I) The court finds that, on a motion for compulsory nonsuit, sufficient evidence to support plaintiffs' case was presented by them as to the following issues:

(1) Their being in the class protected under the Human Relations Act of October 27, 1955, P.L. 744, §§3, 4, 43 P.S. 953, 954(p)(2)(3), plaintiffs are within the protected class;

(2) The recovery of compensatory damages without medical evidence or proof of impact;

(3) The recovery of punitive damages;

(II) The court finds on the issue of the sufficiency of plaintiffs' testimony to support a finding that defendant violated the Human Relations Act of October 27, 1955, *supra,* §5, 43 P.S. 955(i)(1).

That plaintiffs' testimony (that defendant refused to render future dental treatment to plaintiffs unless they first submitted for recordation in defendant's office records the results of their HIV testing) cannot support a verdict for the plaintiffs in light of their unprotected exposure for one month's time to the bodily fluids of a dying AIDS victim; such information bears a reasonable relationship to their future treatment and to the protection of defendant's staff. *Doe v. Kahala Dental Group,* 808 P.2d 1276, 1277 (Haw. 1991).

Therefore, it is ordered, adjudged and decreed that the motion of defendant, Dr. Paul Wirtz, for compulsory nonsuit is granted in accordance and for the reasons set forth in the opinion filed today.